SEABROOK SHIPYARD, Appellant,

v.

Norman Lee EATON, Appellee.

No. 15292.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

May 2, 1968.

Rehearing Denied May 31, 1968.

was signed in favor of appellee in the amount of $2,650.00, which the jury found to represent the diminution in value of appellee's boat proximately caused by Seabrook Shipyard's having moved it to a slip or stall other than the one specified in the agreement.

Hutcheson, Taliaferro & Grundy, John D. Roady, Houston, for appellant.

Ellis F. Morris, Houston, Eddington, Kroll, Friloux & Smith, Houston, of counsel, for appellee.

PEDEN, Justice.

This suit was filed by appellee, Norman Eaton, to recover damages for breach of a written contract labelled "slip rental agreement". After a jury trial, judgment

It is uncontroverted that Hurricane Carla's high tides and winds caused the damage to appellee's yacht; the slip to which it was moved had a much lower roof than did the slip specified in the contract, and most of the damage was done to the superstructure. The basis for his cause is limited to a suit on the written contract; summary judgment was granted in favor of Seabrook Shipyard as to appellee's cause based on a claim of tort or oral contract because his petition was filed more than two years after his boat was damaged.

Mr. Eaton offered in evidence as plaintiff's exhibit 1:

"SEABROOK SHIPYARD    SLIP RENTAL AGREEMENT  October 15, 1959

For the consideration hereinafter stated, Seabrook Shipyard leases and rents to LADY MARGARET II/ and or Owner hereinafter called OWNER, on a calendar month basis, the following described slip, dock, or wharf space at its yacht basin at Seabrook, Texas     H–19 Temp.     , on the following terms, conditions and covenants:

"1.   Space is rented as a base of operations for boat only.

"2.   Walkways to be kept clear and may be jointly used by shipyard personnel and public.

"3.   Storage to be at the sole risk and expense of Owner, and shipyard will not be liable for loss, injury or damage to Owner's boat or property, or to Owner, his servants, agents, or guests, from any cause whatsoever.

"4.   Owner will be liable for damage to shipyard facilities, other vessels or persons in and about shipyard caused by himself, his vessels or his servants, agents or guests.

"5.   The agreed rental is $  25.00   per month, payable in advance on the first day of each month at Seabrook Shipyard, Seabrook, Harris County, Texas.

"6.   Being an essential service to the operation of the boat, Owner agrees that Seabrook Shipyard shall have a lien on Owner's vessel or vessels and all property thereon for unpaid storage and space rental charges and this is in addition to all other liens or remedies provided by law.

"7.   This agreement shall continue until terminated by either party giving written notice to the other party at least ten days prior to the end of the month."

By:  /s/   Ray Johnson                    Owner  /s/   N. L. Eaton

He testified without contradiction that when the agreement was reached the man who signed it for the shipyard explained that the designation of the slip as "H–19 Temp." meant that stall H–19, which will accommodate a larger boat, was to be used until a smaller stall became available, at which time Mr. Eaton would be notified; he could look at it, and if he found it suitable he could move his boat into it. Mr. Johnson, who signed the agreement as representative of the shipyard, was called as a witness by appellant but he did not testify as to what was said in such conversation, nor deny that it occurred and neither did anyone else. Mr. Eaton testified that some of the smaller stalls were wholly unsatisfactory to him.

It is uncontroverted that Seabrook Shipyard moved Mr. Eaton's boat from stall H–19 to stall L–14 before the arrival of Hurricane Carla and without notice to him.

■ Mr. Eaton is a party to this cause. Under the interested witness rule, his uncontradicted testimony would do no more than raise a fact issue concerning the parties' intent as to the meaning of "H–19 Temp." if such testimony was not clear, direct and positive or if there were circumstances in evidence tending to discredit or impeach it. But there are none, and it is especially true that his testimony constitutes an exception to the rule when the opposing party has the means and opportunity of disproving the testimony and fails to do so. Anchor Casualty Co. v. Bowers, 393 S.W.2d 168 (Tex.Sup.1965).

Appellant does not complain as to the amount of the damages. The trial judge submitted to the jury four issues, two damage issues and the following:

## SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that the moving of Plaintiff's boat from Stall No. H 19 to Stall No. L 14 was a proximate cause of damage to Plaintiff's boat?

"To which the jury answered 'We Do.'

## SPECIAL ISSUE NO. 2

"Do you find from a preponderance of the evidence that an act of God was the sole proximate cause of the damage to Plaintiff's boat? You are instructed that by the term 'Act of God' as used in this issue is meant that when damage is due directly and exclusively to natural causes, without human intervention, and no foresight and care which could have been reasonably required of Defendant, Seabrook Shipyard, could have prevented the damage, the damage shall be regarded as having been the sole proximate result of an Act of God.

"To which the jury answered 'We Do Not'."

---

■ There is nothing before us to indicate whether the trial court overruled any objections to the charge, refused any tendered special issues or was requested to or did make any findings of fact. We deem as found by the court in such manner as to support the judgment any omitted necessary issues which are supported by the evidence. Rule 279, Texas Rules of Civil Procedure.

For the reasons stated, we assume that the trial court found that the shipyard breached its agreement to leave appellee's boat in slip H–19 until he moved it to a smaller one.

The transaction between the parties has some elements of a bailment, but the contract indicates the parties did not contemplate that the shipyard would have possession of the boat so this essential element is lacking.

We have examined the contract as a whole. It covers the temporary lease of slip H–19. We hold that a reasonable construction of the contract indicates that it shields the shipyard from liability for loss to appellee's boat, etc., while it is stored at slip H–19 and in any other slip where appellee has moved it. The contract was prepared by the shipyard, which chose its language. It provides exemptions by which an escape from liability is sought. The owner of the boat was entitled to have it stored in the place he had inspected, designated and contracted for; he did not waive the shipyard's liability in the event they breached the contract by moving his boat to a slip he had not examined and approved. Appellant's first point of error, which relies on item 3 of the contract as a complete defense, is overruled.

Appellant's second point asserts that it was error for the trial court to overrule his motion for judgment on the verdict in thereby ruling that the act of moving the boat was a breach of the rental agreement and in failing to construe the agreement as permitting such movement. For the reasons stated, we overrule this point.

Appellant asserts that the damages were consequential and not within the contemplation of the parties when they entered into the agreement. There is testimony in the record which demonstrates that the vicinity of the shipyard had been struck by six or eight hurricanes in the past twenty years. The shipyard owners couldn't know when another hurricane might arrive, but they are charged with knowledge that others will come. Appellee testified that he leased the slip to protect his boat from the weather, and it is obvious that one of the principal services which a shipyard furnishes to its lessees is that of safekeeping for their boats. Appellee's uncontradicted testimony as to his conversation with Mr. Johnson as noted earlier in this opinion demonstrates that appellee reserved the right to approve a change from the slip he had leased. The testimony shows that the height of slip H–19 was forty feet, that the highest part of the boat in question was about six feet above the water and that Hurricane Carla carried a fifteen foot tide. This would allow for clearance in stall H–19, but the height of slip L–14 was only about 21 feet, and without even considering wave action such tides would put the top of appellee's boat against the ceiling beams of stall L–14. We overrule the point.

Appellant's act of moving the boat from the leased premises amounts to a wrongful eviction, and appellee may recover for injury shown to have been the foreseeable consequences of the eviction. Reavis v. Taylor, 162 S.W.2d 1030 (Eastland Tex. Civ.App.1942, ref. w. o. m.).

We have fully examined all of the appellant's other points and each is expressly overruled. We feel that an extended discussion of them would not be helpful.

The judgment of the Trial Court is affirmed.

Affirmed.